## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHIMENE MBAGUE NANDJOU, Individually, and as Administratix of THE ESTATE OF MENELIK TCHOUAMOU and THE ESTATE OF WILLIAM TCHOUAMOU GANJUI, and as Mother and Next Friend of AURELLIA LLANA SALENG and WILMA TCHOUAMOU MGABUE, | : : : : : : : : : | |
| | : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | NO. 1:18-cv-12230 |
| MARRIOTT INTERNATIONAL, INC., MARRIOTT WORLDWIDE CORPORATION, and RELUXICORP, INC. d/b/a THE RESIDENCE INN BY MARRIOTT, | : : : : : | LEAVE TO FILE GRANTED ON JAN. 17, 2019 |
| Defendants. | : | |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO THE *FORUM NON CONVENIENS* DOCTRINE AND FOR LACK OF PERSONAL JURISDICTION

Respectfully submitted,

Paul K. Leary, Jr., Esquire
COZEN O'CONNOR
One Liberty Place, 28th Floor
1650 Market Street
Philadelphia, PA 19103
T:  215-665-6911
F:  215-701-2011
PLeary@cozen.com
*Attorney for Defendants*

# Table of Contents

Page

I.   Plaintiff has failed to show why the *forum non conveniens* analysis weighs in favor of a forum in Massachusetts .................................................... 1

    A.   The unavailability of a jury trial does not render Quebec an inadequate forum .................................................................. 1

    B.   It appears that Plaintiff no longer lives in Massachusetts—a fact that reduces the deference due to her choice of forum ........................... 3

    C.   Plaintiff does not dispute that most of the private- and public-interest factors point to Quebec ............................................... 4

II.  Plaintiff has failed to satisfy her burden to establish specific jurisdiction ............................................................................................. 7

    A.   The *Nowak* exception to the proximate-cause standard for specific jurisdiction cannot be met here ................................... 7

    B.   Reluxicorp is not subject to this court's jurisdiction, ........................... 14

    C.   If this court were to find that it has jurisdiction over the Marriott Defendants but not over Reluxicorp, that would strengthen the case for applying the *forum non conveniens* doctrine ............................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace Am. Ins. Co. v. Oyster Harbors Marine, Inc.*,
310 F.Supp.3d 295 (D. Mass. 2018) (Burroughs, J.) ...................................... 13, 14

*Am. Dredging Co. v. Miller*,
510 U.S. 443 (1994) ..................................................................................... 1

*Badia v. Hamanasi Adventure & Dive Resort*,
Civ. Act. No. 16-10252-LTS, 2017 WL 551818 (D. Mass. Feb. 10,
2017)............................................................................................................ 11

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*,
825 F.3d 28 (1st Cir. 2016)........................................................................ 7, 14

*Brookfield Mach., Inc. v. Calbrit Design*,
929 F.Supp. 491 (D. Mass. 1996) .............................................................. 6

*Christopher v. Mount Snow, Ltd.*,
Civ. Act. No. 95-10352-MLW, 1996 WL 590738 (D. Mass. Sept. 24,
1996)............................................................................................................ 10

*Cossaboon v. Maine Med. Ctr.*,
600 F.3d 25 (1st Cir. 2010)........................................................................ 12

*Dagesse v. Plant Hotel N.V.*,
113 F.Supp.2d 211 (D.N.H. 2000) ............................................................ 10

*Daynard v. Ness, Motley*,
290 F.3d 42 (1st Cir. 2002)............................................................ 15, 16, 17, 18

*Dindio v. First Babylon, Inc.*,
328 F.Supp.2d 126 (D. Mass 2004) ........................................................... 16

*Doe v. Ritz Carlton Hotel Co., LLC*,
666 Fed.Appx. 180 (3d Cir. 2016) ............................................................ 3

*Doe v. Sun Int'l Hotels*,
20 F.Supp.2d 1329 (S.D. Fl. 1998) ........................................................... 2

*In re Factor VIII or IX Concentrate Blood Products Litig.*,
484 F.3d 951 (7th Cir. 2007) ..................................................................... 2

*Gulf Oil v. Gilbert,*
  330 U.S. 501 (1947) ........................................................................... 6

*Harlow v. Children's Hosp.,*
  432 F.3d 50 (1st Cir. 2005)................................................................ 8

*Howe v. Goldcorp Invest., Ltd.,*
  946 F.2d 944 (1st Cir. 1991) ............................................................ 5

*Iragorri v. Int'l Elevator, Inc.,*
  203 F.3d 8 (1st Cir. 2000)......................................................... 6, 7, 19

*Logan Int'l Inc. v. 1556311 Alberta Ltd.,*
  929 F. Supp. 2d 625 (S.D. Tex. 2012)............................................. 2

*Magnin v. Teledyne Cont'l Motors,*
  91 F.3d 1424 (11th Cir. 1996) ......................................................... 2

*Metcalf v. Bay Ferries Ltd.,*
  937 F.Supp.2d 147 (D. Mass. 2013) ............................................. 12

*Nowak v. Tak How Investments, Ltd.,*
  94 F.3d 708 (1st Cir. 1996)...................................................... *passim*

*O'Keefe v. Amin,*
  1996 WL 463685 (D. Mass. 1996) ................................................ 16

*Piper Aircraft v. Reyno,*
  454 U.S. 235 (1981) ................................................................... 1, 3, 4

*Preferred Mut. Ins. Co. v. Stadler Form Aktiengesellschaft,*
  308 F.Supp.3d 463 (D. Mass. 2018) .............................................. 12

*Reiser (UK) Ltd. v. Bryant,*
  494 F.Supp.2d 28 (D. Mass. 2007) .................................................. 5

*Rodriguez v. Samsung Elecs. Co., Ltd.,*
  827 F.Supp.2d 47 (D. Mass. 2011) ............................................... 11

*Sigros v. Walt Disney World Co.,*
  129 F.Supp.2d 56 (D. Mass. 2001) .......................................... 12, 17

*Snofrost AB v. Hakansson,*
  Civ. Act. No. 18-10798-DPW, 2018 WL 6682765 (D. Mass. Dec. 19,
  2018).................................................................................................. 4

*Theos & Sons, Inc. v. Mack Trucks, Inc.,*
    729 N.E.2d 1113 (Mass. 2000) ............................................................ 15

*Ticketmaster-New York, Inc. v. Alioto,*
    26 F.3d 201 (1st Cir. 1994).................................................................. 7

*Valenti ex rel Valenti v. Marriott Int'l, Inc.,*
    Civ. Act. No. 10-0758, 2011 WL 869189 (D.N.J. Mar. 10, 2011) ..................... 1, 16

*World Energy Alternatives, LLC v. Naturol Bioenergy Limited,*
    Civ. Act. No. 08-11085-MBB, 2009 WL 10694108 (D. Mass. 2009)................... 2, 3

Defendants Marriott International, Inc., Marriott Worldwide Corporation, and Reluxicorp, Inc. submit this reply brief in further support of their motion to dismiss the complaint pursuant to the *forum non conveniens doctrine* and for lack of personal jurisdiction (ECF Doc. 11). Defendants limit this brief to responding to the arguments set forth by Plaintiff in her opposition (ECF Doc. 14).

## I. Plaintiff has failed to show why the *forum non conveniens* analysis weighs in favor of a forum in Massachusetts

### A. The unavailability of a jury trial does not render Quebec an inadequate forum

Plaintiff argues that, because there is no right to a jury trial in Quebec, Quebec is not an adequate alternative forum. (Opp. 16.)

If Plaintiff's argument were right, the *forum non conveniens* doctrine would almost entirely cease to exist. That is because, "[a]s a consequence" of the federal venue transfer statute, "the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad," *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 (1994), and almost no foreign countries afford civil litigants a right to a trial by jury, *see Piper Aircraft v. Reyno,* 454 U.S. 235, 252 n.18 (1981).

But Plaintiff's argument is wrong. Consistent with the principle that a forum is inadequate only where it provides "no remedy at all," *Piper*, 454 U.S. at 254, "[c]ourts have found that the absence of trial by jury—a common feature of civil law systems—does not make a forum inadequate." *Valenti ex rel Valenti v. Marriott Int'l, Inc.*, Civ. Act. No. 10-0758, 2011 WL 869189, at *4 (D.N.J. Mar. 10, 2011)

(collecting authorities). *See also Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996) ("As cherished as trial by jury is in our law, … [plaintiff] has not cited us to any Supreme Court or court of appeals decision giving such considerations substantial weight in *forum non conveniens* analysis…. As the Supreme Court noted in *Piper…,* 'jury trials are almost always available in the United States, while they are never provided in civil law jurisdictions,' and '[e]ven in the United Kingdom, most civil actions are not tried by a jury.' Yet, there are numerous decisions dismissing cases in favor of a civil law jurisdiction forum, and in favor of the United Kingdom as a forum."); *Logan Int'l Inc. v. 1556311 Alberta Ltd.*, 929 F. Supp. 2d 625, 633 (S.D. Tex. 2012) (similar); *In re Factor VIII or IX Concentrate Blood Products Litig.*, 484 F.3d 951, 958–59 (7th Cir. 2007) (affirming the district court's dismissal on *forum non conveniens* grounds in favor of the United Kingdom, even while recognizing that "there would be no jury trial" there, "whereas there would be a Seventh Amendment right to a jury in the United States").

The three cases that Plaintiff cites are not to the contrary. In *World Energy Alternatives, LLC v. Naturol Bioenergy Limited*, Civ. Act. No. 08-11085-MBB, 2009 WL 10694108 (D. Mass. 2009), the court merely inquired as to whether the plaintiff would have a right to a jury trial in India, without saying that the absence of such a right would render India an inadequate forum. *Id*. at *13. In *Doe v. Sun Int'l Hotels*, 20 F.Supp.2d 1329 (S.D. Fl. 1998), the court listed among several "practical reasons for trying the case in the United States" the fact that there is no right to a trial in the Bahamas. *Id*. at *1330. In so doing, it gave no indication as to the weight that

2

that factor carried in the public- and private-interest analysis, and certainly did not conclude that the factor rendered the Bahamas an inadequate forum. *See id.* And in *Doe v. Ritz Carlton Hotel Co., LLC*, 666 Fed.Appx. 180 (3d Cir. 2016), a matter briefed and argued by undersigned counsel, the Third Circuit had this to say: "To the extent [plaintiffs] argued below that the lack of a jury trial guarantee *per se* renders the Cayman Islands an inadequate alternative forum, we reject this argument." *Id.* at 185 n. 2. The Third Circuit went on to affirm the district court's dismissal under the *forum non conveniens* doctrine. *See id.* at 186.

Quebec is an adequate forum, and Plaintiff has failed to show otherwise.

### B. It appears that Plaintiff no longer lives in Massachusetts—a fact that reduces the deference due to her choice of forum

According to the affidavit that Plaintiff submitted in support of her opposition to Defendants' motion, Plaintiff lived in Massachusetts at least up to 2017, and "continue[s] to maintain a residence in Westport, Massachusetts." (Pl.'s Affidavit ¶ 38, Exhibit 1 to Pl.'s Opp., ECF Doc. 14-1.) However, it appears that she now lives in Georgia, where she has "recently set up an additional residence." (*Id.*) Omitted from Plaintiff's affidavit is the location where it was signed. Plaintiff's complaint stops conspicuously short of saying that she resides in Massachusetts, instead saying that she "maintain[s] a residence" in Massachusetts. (Complaint ¶ 5.) Nowhere in her papers does Plaintiff state that she resides in Massachusetts.

So it appears that Plaintiff resides in Georgia. Under controlling law, that is significant. "When the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Piper*, 454 U.S. at 255–56. But "[w]hen the plaintiff is

3

foreign," that "assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." *Id.* at 256. *See also Snofrost AB v. Hakansson*, Civ. Act. No. 18-10798-DPW, 2018 WL 6682765, at *3 (D. Mass. Dec. 19, 2018) ("Because Snöfrost is a foreign entity, I start with the presumption that its choice of forum is afforded diminished deference.").

Thus, a consideration that had appeared to point to Massachusetts— Plaintiff's supposed residence there—now appears to have been unfounded.

## C.   Plaintiff does not dispute that most of the private- and public-interest factors point to Quebec

The only facts that Plaintiff cites as favoring a forum in Massachusetts are as follows:

- Plaintiff "maintain[s] a residence" in Massachusetts. (Pl.'s Affidavit ¶ 38, Exhibit 1 to Pl.'s Opp., ECF Doc. 14-1.) But, as noted above, Plaintiff does not appear to live in Massachusetts.

- A potential witness from Arizona—who has a demonstrated ability to travel to Quebec, and who would apparently be willing to testify at trial in either Quebec or Massachusetts—states that she would find testifying in Massachusetts more convenient than testifying in Quebec.

- A news report suggests that a potential witness may live in Massachusetts. This is the only witness who appears to live in Massachusetts.

On the other side of the scale are the following facts:

- Persons with essential information relevant to this case are likely to include nonparty first-responders who live in Quebec; nonparty hospital personnel who live in Quebec; the coroner in Quebec who examined the decedents; and nonparty officials of the Quebec Building Authority.

- The accident occurred at a swimming pool in Quebec, and the condition and configuration of the pool are relevant to Plaintiff's claims. Nothing

happened in Massachusetts that caused the allegedly unsafe conditions at the swimming pool in Quebec.

- The laws and ordinances that were allegedly violated were Quebecois laws and ordinances, and the court that decides this case will have to become familiar with those laws and ordinances

- Most of the relevant documentary evidence is likely to be located in Quebec and written in French.

- Any nonparties who may be responsible for the design and maintenance of the premises are likely located in Canada and would not be able to be joined should this case proceed in Massachusetts

Plaintiff does not—and cannot—dispute the truth of these facts. Instead, she attempts to minimize their importance. But the attempt fails.

First, and most obviously, the fact that the accident and all of the other material events took place in Quebec is hardly a minor consideration that can be swept under the rug, as Plaintiff tries to do (see, e.g., Opp. 18–19). On the contrary, the First Circuit has recognized that this fact alone will favor the foreign forum with "unusual strength." *See Howe v. Goldcorp Invest., Ltd.*, 946 F.2d 944, 951 (1st Cir. 1991).

Second, based on Plaintiff's own allegations (Complaint ¶¶ 42–61, 71–72) and descriptions of relevant documents (Opp. 17–18)—all of which were authored by persons in Quebec—this court can "reasonably infer[] that the greater number of witnesses will be Canadian." *Reiser (UK) Ltd. v. Bryant*, 494 F.Supp.2d 28, 32 (D. Mass. 2007). Plaintiff tries to minimize the importance of this fact by suggesting that some of the relevant witnesses will be under the control of a party. Even so, "the convenience to the expected witnesses is probably the most important factor,"

5

*Brookfield Mach., Inc. v. Calbrit Design*, 929 F.Supp. 491, 501 (D. Mass. 1996) (internal quotation marks omitted), and there appears to be only one witness who lives in Massachusetts. And some witnesses from Quebec will *not* be under the control of a party and will thus have to be compelled to give deposition testimony through the (highly cumbersome) letters-rogatory or Hague Convention procedures. But, as the Supreme Court has recognized, forcing litigants to "try their cases on deposition[] is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil v. Gilbert*, 330 U.S. 501, 511 (1947).

Third, Plaintiff attempts to minimize Quebec's interest in having this case tried locally—an interest recognized by the First Circuit, *see, e.g., Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000)—by suggesting that there is a strong interest in trying this case in Massachusetts because Plaintiff formerly resided there. However, Massachusetts has no more interest than does any other state in trying a case stemming from an accident that occurred in Quebec. Nor should Massachusetts jurors be burdened with a case centering on the conditions of a pool in Quebec.

Fourth, the extent of the burden that this court would face if it had to become familiar with applicable Quebecois law is starkly illustrated by the 37-page, single-spaced expert report on applicable Quebecois law that Plaintiff has submitted as Exhibit 8 to her opposition. (ECF Doc. 14-8.)

Finally, although Plaintiff suggests that some Quebec-pointing factors—such as the location of documentary evidence, or the ability to join third parties—might not be sufficient in themselves to justify transferring this case to Quebec, those factors certainly add to the Quebec side of the scale.

Notwithstanding the fact that one witness lives in Massachusetts, and notwithstanding the fact that Massachusetts is somewhat closer to Georgia than is Quebec, the defendants have shown "that the compendium of factors relevant to the private and public interests implicated by the case strongly favors dismissal" of this case in favor of a forum in Quebec. *Iragorri*, 203 F.3d at 12.  This court should accordingly dismiss this case pursuant to the *forum non conveniens* doctrine.

## II.    Plaintiff has failed to satisfy her burden to establish specific jurisdiction

"The plaintiff has the burden of establishing that jurisdiction over the defendant lies in the forum state." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). Courts will "not credit conclusory allegations or draw farfetched inferences." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994). Here, Plaintiff has not met her burden.

### A.    The *Nowak* exception to the proximate-cause standard for specific jurisdiction cannot be met here

In assessing whether a defendant's conduct is sufficiently related to the forum state to warrant specific jurisdiction over that defendant, the First Circuit generally applies the "proximate cause standard"—a standard that asks whether

7

the defendant's contacts with the forum state have given rise to the plaintiff's cause of action. As the First Circuit explained in *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708 (1st Cir. 1996): "[W]e think the proximate cause standard better comports with the relatedness inquiry because it so easily correlates to foreseeability, a significant component of the jurisdictional inquiry." *Id.* at 1715. In so stating, the First Circuit rejected the "but for" jurisdictional standard—pursuant to which specific jurisdiction would exist on the basis of any "event that hindsight can logically identify in the causative chain"—as lacking a "limiting principle." *Id.* As the First Circuit further explained in *Harlow v. Children's Hosp.*, 432 F.3d 50 (1st Cir. 2005): "A broad 'but-for' argument is generally insufficient. Because 'but for' events can be very remote, ... due process demands something like a 'proximate cause' nexus." *Id.* at 61.

There appears to be no dispute that, if the default proximate-cause standard applies in our case, this court would lack specific jurisdiction over all Defendants. <u>That is because there is no allegation that Defendants had any contacts with Massachusetts that caused the swimming pool in Quebec to be unsafe.</u>

In arguing that this court does have specific jurisdiction over Defendants, Plaintiff invokes an exception to the proximate-cause standard that the *Nowak* court created. But the exception is a very narrow one. While "emphasiz[ing] the importance of proximate causation," *Nowak*, 94 F.3d at 716, the *Nowak* court stated that "[w]e see no reason why, in the context of a relationship between a contractual or business association and a subsequent tort, the absence of proximate cause per se

8

should always render the exercise of specific jurisdiction unconstitutional," *id.* at 715. In similarly guarded language, it elaborated: "When a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result." *Id.*

The *Nowak* court then examined the plaintiff's allegations in light of that narrow exception. It gave particular importance to the fact that the defendant—a Hong Kong hotel—had, after considerable negotiations, entered into a business arrangement with a Massachusetts company whereby the hotel had agreed to offer the company discounted rates based on a minimum number of room reservations per night; that one of the employees of the Massachusetts company had booked a room at the hotel pursuant to that arrangement; and that the accident giving rise to the action occurred at the hotel in connection with that reservation. *Id.* at 711. Because the Hong Kong hotel "directly target[ed]" the Massachusetts company "in an ongoing effort to further a business relationship," and because of the "extensive back-and-forth resulting in" the Massachusetts company's practice of reserving rooms for their employees at the Hong Kong hotel, the First Circuit concluded that it "would be imprudent to reject jurisdiction at this early stage of the inquiry." *Id.* at 716.

So for the *Nowak* exception to apply, a foreign hotel must do more than merely make contact with a customer in the forum state. The foreign hotel must do something along the lines of directly targeting that customer for the purpose of

inducing him or her to come to the specific hotel, engaging in an "ongoing effort to further a business relationship" with that customer, and engaging in "extensive back-and-forth" with that customer.

Subsequent case law confirms the narrowness of *Nowak*'s exception to the proximate-cause standard, emphasizing that there must be a preexisting, established business relationship between the plaintiff and the defendant:

- *Christopher v. Mount Snow, Ltd.*, Civ. Act. No. 95-10352-MLW, 1996 WL 590738 (D. Mass. Sept. 24, 1996): The plaintiff brought an action in court in Massachusetts against a Vermont ski resort for injuries she suffered while skiing there. *Id*. at *1. In concluding that it lacked jurisdiction over the ski resort, the court explained that the "First Circuit's qualification of the proximate cause standard in *Nowak* is not applicable to the present case" because, "[u]nlike the plaintiff and the defendant in *Nowak,* there was no preexisting 'contractual or business association' between [the ski resort] and [plaintiff] in this case." *Id*. at *7. Moreover, although the ski resort engaged in "advertising activity in Massachusetts," id. at *2, and although the plaintiff decided to go to the ski resort "as a result of those advertisements," *id*., the ski resort "did not specifically target [plaintiff], as an individual, in its promotional activities," *id*. at *7, in contrast to the hotel in *Nowak*.

- *Dagesse v. Plant Hotel N.V.*, 113 F.Supp.2d 211 (D.N.H. 2000): The plaintiffs, residents of New Hampshire, brought suit in New Hampshire for injuries alleged to have occurred at a Marriott resort in Aruba. *Id*. at 213.  The plaintiffs argued that the resort was subject to specific jurisdiction in New Hampshire because its agent (Marriott) had placed advertisements in New Hampshire that had been viewed by one of the plaintiffs; had maintained an interactive website accessible from New Hampshire that advertised the resort and allowed reservations to be made through it; and had mailed a confirmation of the reservations to the plaintiffs in New Hampshire. *Id*. at 217. The court held that there was no specific jurisdiction. *Id*. at 218. In so holding, the court held that *Nowak*'s "narrow exception to the proximate cause standard" was inapplicable because the plaintiffs had "failed to adduce any evidence that [the defendants], whether acting directly or through Marriott International, targeted them or any other New Hampshire residents in an ongoing and ultimately successful effort to further a business relationship. Simply put, none of the facts produced by the [plaintiffs] suggest the sort of established business relationship that existed between the defendant and the plaintiff's employer in *Nowak*." *Id*. at 218.

- *Rodriguez v. Samsung Elecs. Co., Ltd.*, 827 F.Supp.2d 47 (D. Mass. 2011): An employee of a Massachusetts company sought to sue a Korean company in court in Massachusetts for injuries that he suffered while installing a machine at the Korean company's premises in Korea. *Id.* at 49–50. The court held that it lacked jurisdiction over the Korean company. In so holding, the court acknowledged that the Korean company's targeted contacts with the Massachusetts company led to the plaintiff's performing work for the Korean company in Korea. Those contacts, however, did not suffice to establish relatedness. *See id.* at 51. Because the plaintiff's cause of action sounded in negligence, and because it "arose directly out of allegedly tortious conduct which occurred entirely in Korea," specific jurisdiction was not present. *See id.*

- *Badia v. Hamanasi Adventure & Dive Resort*, Civ. Act. No. 16-10252-LTS, 2017 WL 551818 (D. Mass. Feb. 10, 2017): This case is discussed on pages 17–18 of our opening brief. It arose from an injury at a resort in Belize that occurred on a resort-provided vehicle. Even though the resort had specifically reached out to the plaintiff in Massachusetts by sending him various emails, including an email "communicating to him the Resort's offerings and pricing" and an email mentioning that the resort provided off-property transportation, *id.* at *2, those communications were not sufficient to give rise to specific jurisdiction, *see id.* at *3–4. Plaintiff argues that this case is distinguishable because "the injury did *not* occur on the premises of the resort that solicited the plaintiffs' stay, but rather in the course of a motor vehicle excursion off-property, and by reason of intervening causes, rendering the 'link' between solicitation and injury too tenuous and remote." (Opp. 12.) That distinction is unavailing because the resort was being sued for providing the off-property transportation, which was part of the advertised package. Nor did the fact that the injury occurred off-property figure into the court's analysis. Rather, the reason why the court found jurisdiction lacking was that, "[e]ven under a 'relaxed' standard, the Court cannot find that this litigation about what happened on February 22, 2013, is 'founded directly' on the Resort's advertising, website, or forum-based activities in November 2012." *Id.* at *4.

Distilled to their essence, *Nowak* and the subsequent case law interpreting it stand for the principle that the proximate-cause standard for specific jurisdiction is the default standard, and that only where the defendant specifically targets, and seeks to establish a specific business relationship with, the plaintiff in his or her forum might an exception to *Nowak* apply.

11

This requirement of specifically targeting the forum is analogous to the principle that we find in stream-of-commerce cases: that "'jurisdiction is permitted only where the defendant can be said to have targeted the forum.' This can be shown by some 'plus' factor(s), such as 'special state-related design, advertising, advice, marketing.'" *Preferred Mut. Ins. Co. v. Stadler Form Aktiengesellschaft*, 308 F.Supp.3d 463, 468–69 (D. Mass. 2018) (internal quotation marks omitted) (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 889 (2011) (Breyer, J., concurring).

By contrast, general advertising efforts that are not specifically targeted at the forum state or at any specific business relationship will not suffice to establish specific jurisdiction. That principle was recently reaffirmed in *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25 (1st Cir. 2010), where the fact that the defendant's "advertising, although it may incidentally reach some New Hampshire viewers or listeners, is not targeted toward New Hampshire residents in particular," weighed against subjecting the defendant to personal jurisdiction in New Hampshire. *Id.* at 34. And so it in not surprising that, in all the cases that Plaintiff cites in support of her relatedness argument—*Nowak*, *Calkins*, *Rooney*, *Sigros*, and *Metcalf*—the defendant specifically targeted communications to the particular plaintiff, and/or specifically targeted advertisements to the plaintiff's forum state, in an effort to entice the plaintiff to visit a specific hotel. *See, e.g., Metcalf v. Bay Ferries Ltd.*, 937 F.Supp.2d 147, 154 (D. Mass. 2013) (explaining that only because the "Defendant here *did* place targeted advertisements in Massachusetts-based newspapers and on

Massachusetts televisions channels, as well as actively solicit business in Boston on multiple occasions," could the *Nowak* exception apply).

*     *     *

Here, there is no allegation that any of the Defendants made targeted efforts to specifically entice Plaintiff or her family to visit the Montreal hotel. From Plaintiff's allegations, it appears that, at most, Plaintiff and her family received some general brochures in the mail that listed the Montreal hotel among  many other Marriott-branded hotels. (Pl.'s Affidavit ¶¶  2–8, Exhibit 1 to Pl.'s Opp., ECF Doc. 14-1.) Not only do Plaintiff's vague allegations about these brochures and their contents lack sufficient detail to meet her burden of establishing jurisdiction, *see Ace Am. Ins. Co. v. Oyster Harbors Marine, Inc.,* 310 F.Supp.3d 295, 307 (D. Mass. 2018) (Burroughs, J.) ("[Cross-claim plaintiff] nevertheless cannot carry its [jurisdictional] burden through broadly worded allegations and imprecise evidence."); but to hold that the sender of a general brochure listing hundreds or thousands of hotels can be subject to specific jurisdiction in any state where any of those hotels is located would be to disregard the concept of foreseeability that is at the heart of the specific-jurisdiction analysis, *id.* at 304.

Similarly, Plaintiff mentions in her affidavit that her husband was "encouraged by employees of the Boston Marriott Copley Place" to participate in the "Friends and Family" discount program (Pl.'s Affidavit ¶ 11, Exhibit 1 to Pl.'s Opp., ECF Doc. 14-1), but there is no indication that Plaintiff or her husband was encouraged through that program to choose the Montreal hotel in particular.

13

And although Plaintiff alleges that she and her husband saw advertisements for Marriott in print magazines (*id.* ¶ 9), she does not say that those advertisements mentioned the Montreal hotel in particular, or that the advertisements appeared in Massachusetts-based publications. *Cf. Ace Am. Ins. Co.,* 310 F.Supp.3d at 307–08 ("Defendant's] advertising of nationwide services on its website and nationwide liability coverage are also not suggestive of any effort to specifically cultivate a market in Massachusetts."). Nor does Plaintiff even suggest that she or her husband made any contact with the Montreal hotel directly.

For all these reasons, this case is a far cry from the kind of situation that the *Nowak* court believed could potentially justify relaxing the proximate-cause standard: that is, a situation where there was an ongoing and longstanding relationship between a particular foreign hotel and a Massachusetts resident, and where there was an "extensive back-and-forth" between the foreign hotel and the Massachusetts resident that "result[ed] in" the reservation of rooms at that particular hotel. (*Nowak*, 94 F.3d at 715–16.)

Plaintiff has thus failed to meet her "burden of establishing that jurisdiction over the defendant lies in the forum state." *Baskin-Robbins Franchising LLC*, 825 F.3d 28. If it is not dismissed under the *forum non conveniens* doctrine, this case should be dismissed for lack of personal jurisdiction.

### B.   Reluxicorp is not subject to this court's jurisdiction,

Plaintiff argues that, if the Marriott Defendants could be subject to personal jurisdiction in Massachusetts on the basis of their contacts with Massachusetts,

14

then those contacts should be imputed to Reluxicorp (the owner of the Montreal hotel) as a basis for subjecting Reluxicorp to personal jurisdiction. Not so.

For the reasons set forth above, there are no contacts between the Marriott defendants and Massachusetts sufficient to give rise to specific jurisdiction. Thus, the Marriott Defendants are not subject to personal jurisdiction, and Plaintiff's imputation argument is beside the point.

But even if there were sufficient contacts between the Marriott Defendants and Massachusetts to give rise to specific jurisdiction over the Marriott Defendants, those contacts could not be imputed to Reluxicorp. In arguing to the contrary, Plaintiff relies on *Daynard v. Ness, Motley*, 290 F.3d 42 (1st Cir. 2002), which holds that one party's contacts with a forum can be imputed to another party on the basis of "an actual or implied agency relationship …. between the parties." *Id*. at 54. Plaintiff goes on to argue that the Marriott Defendants acted as Reluxicorp's agent in connection with various marketing efforts that benefited Reluxicorp (Opp. Br. 8), and that the Marriott Defendants' alleged contacts with Massachusetts can thus be imputed to Reluxciorp.

The argument fails. "An agency relationship is created when there is mutual consent, express or implied, that the agent is to act on behalf [of] and for the benefit of the principal, and subject to the principal's control." *Theos & Sons, Inc. v. Mack Trucks, Inc.*, 729 N.E.2d 1113, 1119 (Mass. 2000). Plaintiff points to nothing that suggests that the Marriott Defendants were subject to Reluxicorp's control in connection with the marketing efforts. On the contrary, Plaintiff alleges that it was

*Reluxicorp* that had to agree to "abid[e] by certain standards imposed by Marriott." (Opp. 6.) And indeed it is highly implausible that, as just one of more than 6,000 Marriott franchisees (see Declaration of Bancroft S. Gordon ¶ 7, Exh. A to Defs.' Motion, ECF Doc. 11-1), Reluxicorp should exercise control over the Marriott Defendants' marketing efforts.[1]

Nor does Plaintiff's agency-by-estoppel theory work. (Opp. 9.) Under the agency-by-estoppel doctrine, a "person who is not otherwise liable as a party to a transaction purported to be done on his account, is nevertheless subject to liability to persons who have changed their positions because of their belief that the transaction was entered into by or for him, if (a) he intentionally or carelessly caused such belief, or (b) knowing of such belief and that others might change their positions because of it, he did not take reasonable steps to notify them of the facts." *Daynard*, 290 F.3d at 56 (quoting Restatement (Second) of Agency § 8B (1958).) That doctrine can apply in our case only if, at the time Plaintiff's husband made a reservation at the Montreal hotel through Marriott's auspices, he was under the belief that Marriott was acting on behalf of Reluxicorp. But Plaintiff's position in this litigation is that her husband believed that the Montreal hotel was owned and operated by *Marriott*—and, presumably, that Plaintiff's husband had never even heard of Reluxicorp before. (Opp. 9–10.) So Plaintiff has no basis for suggesting that

---

[1] To the extent that Plaintiff invokes *O'Keefe v. Amin*, 1996 WL 463685 (D. Mass. 1996) in support of her imputation argument, that case pre-dates *Daynard* and so is of little relevance. As for *Dindio v. First Babylon, Inc.*, 328 F.Supp.2d 126 (D. Mass 2004), the court there did not rule one way or the other on the question of personal jurisdiction.

Reluxicorp caused Plaintiff's husband to believe that Marriott was acting on Reluxicorp's behalf.

Plaintiff's ratification argument is also unavailing. (Opp. 9.) If there were a dispute about Marriott's authority to enter into the transaction by which Plaintiff's husband booked a room at Reluxicorp's hotel, then Reluxicorp's acceptance of the reservation and rate form might well have acted to ratify the transaction and thereby to have bound Reluxicorp to the transaction. (That was the situation in *Daynard*.) But that is very different from saying that Reluxicorp somehow ratified all of the marketing efforts that the Marriott defendants had engaged in. Indeed, it is hard to understand how marketing efforts can even be "ratified." The concept of ratification is out of place here.

As for Plaintiff's "common enterprise" argument (Opp. 9–10), it fails because it is based on a (pre-*Daynard*) case that says only that "affiliated corporations can be presumed to function as agents of one another when 'there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.'" *Sigros v. Walt Disney World Co.*, 129 F.Supp.2d 56, 64 (D. Mass. 2001) (quoting *My Bread Baking Co. v. Cumberland Farms, Inc.,* 233 N.E.2d 748 (Mass. 1968)). There is no evidence that Reluxicorp's corporate structure is intertwined with that of the Marriott Defendants. On the contrary, the Declaration of Bancroft S. Gordon confirms that

Reluxicorp is "not a subsidiary or affiliate of Marriott International or MWC, nor do Marriott International and Reluxicorp share any directors, officers or employees." (Declaration of Bancroft S. Gordon ¶ 11, Exh. A to Defs.' Motion, ECF Doc. 11-1).

Finally, Plaintiff argues that there was a "sufficient relationship" between the Marriott Defendants and Reluxicorp to justify imputing the acts of the Marriott Defendants to Reluxicorp. (Opp. 10.) This argument is neither factually nor legally developed, so it is difficult to know how to respond to it. We do note, however, that the only place where the term "sufficient relationship" occurs in the *Daynard* opinion is in a paragraph that concludes: "We think it consistent with the Due Process Clause to attribute to the Scruggs defendants the Motley defendants' retention of, and certain interactions with, Daynard where, as Daynard alleges, they have led Daynard and the public to believe they were joint venturers." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 57 (1st Cir. 2002). Again, far from suggesting that she was led to believe that Reluxicorp and the Marriott Defendants were joint venturers, Plaintiff takes the position that she and her husband were not even aware of the existence of Reluxicorp. So Plaintiff's "sufficient relationship" theory seems wholly out of place here.

For all these reasons, Plaintiff has failed to meet her burden of establishing that Marriott's contacts can be imputed to Reluxicorp for jurisdictional purposes. Nor are any direct contacts between Reluxicorp and Massachusetts are alleged. Thus, even if this court could somehow exert personal jurisdiction over the Marriott Defendants, it could not do so over Reluxicorp.

**C.   If this court were to find that it has jurisdiction over the Marriott Defendants but not over Reluxicorp, that would strengthen the case for applying the *forum non conveniens* doctrine**

For the reasons stated above and in the opening brief, this court lacks jurisdiction over *all* Defendants. If this court were nonetheless to conclude that it had jurisdiction over the Marriott Defendants but not over Reluxicorp, then the argument for dismissing this action under the *forum non conveniens* doctrine would grow even stronger. In such a situation, the desirability of avoiding the prospect of two courts in two different countries deciding cases with substantially overlapping facts would be an additional reason why "considerations of convenience and judicial efficiency" would "strongly favor," *Iragorri*, 203 F.3d at 12, litigating this action in a single forum in Quebec (where all defendants have stipulated to process and where there are no statute-of-limitations problems).

## <u>CONCLUSION</u>

This case should be dismissed pursuant to the *forum non conveniens* doctrine. In the alternative, it should be dismissed for lack of personal jurisdiction.

Respectfully submitted,

COZEN O'CONNOR

*/s/ Paul K. Leary, Jr.*
Paul K. Leary, Jr., Esquire
One Liberty Place, 28th Floor
1650 Market Street
Philadelphia, PA 19103
T:  215-665-6911
F:  215-701-2011

PLeary@cozen.com
*Attorney for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing Reply Brief was filed with the Court and served on all counsel of record on January 31, 2019 via the Court's ECF system.

*/s/ Paul K. Leary, Jr.*
Paul K. Leary, Jr., Esquire