UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHIMENE MBAGUE NANDJOU, Individually, and as Administratrix of THE ESTATE OF MENELIK TCHOUAMOU and THE ESTATE OF WILLIAM TCHOUAMOU GANJUI, and as Mother and Next Friend of AURELLIA LLANA SALENG and WILMA TCHOUAMOU MGABUE,<br><br>Plaintiff,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC., MARRIOTT WORLDWIDE CORPORATION, and RELUXICORP, INC. d/b/a THE RESIDENCE INN BY MARRIOTT,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*     Civil Action No. 18-cv-12230-ADB |

## AMENDED MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS AND FOR LACK OF PERSONAL JURISDICTION

BURROUGHS, D.J.

Plaintiff Chimene Mbague Nandjou ("Plaintiff") filed this action against Marriott International, Inc., Marriott Worldwide Corporation (together "Marriott"), and Reluxicorp, Inc. d/b/a The Residence Inn by Marriott ("Reluxicorp") (collectively "Defendants"), claiming that Defendants' conduct led to the deaths of William Tchouamou Ganjui and Menelik Tchouamou. Plaintiff brings several claims, including wrongful death, vicarious liability, and negligent infliction of emotional distress. See [ECF No. 1-3 (hereinafter "Complaint" or "Compl.")].

On April 29, 2019, the Court denied Defendants' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure or for *forum non conveniens*. [ECF No. 23]. On May 20, 2019, Defendants moved for reconsideration and a

1

certificate of appealability pursuant to 28 U.S.C. § 1942(b). [ECF No. 26]. The Court now issues an amended memorandum to clarify and affirm its April 29, 2019 finding that it has personal jurisdiction over the defendants. The Court denies the request for a certificate of appealability under 28 U.S.C. § 1942(b) for the reason discussed at the July 2, 2019 status conference, but the Court will ALLOW a renewed motion to dismiss for *forum non conveniens* following discovery on the issue, which shall be completed by July 26, 2019.

## I. STANDARD OF REVIEW

Plaintiff bears the burden of establishing the Court's personal jurisdiction over the Defendants. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). Under the "prima facie" standard, "the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Bluetarp Fin., Inc. v. Matrix Constr. Co., Inc., 709 F.3d 72, 79 (1st Cir. 2013) (quoting Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)). "The plaintiff's properly documented evidentiary proffers are accepted as true for purposes of making the prima facie showing, and we construe these proffers in a light most favorable to plaintiff's jurisdictional claim." Id.

The Court considers "the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). Plaintiff may not, however, establish the Court's personal jurisdiction over the Defendants with "unsupported allegations in [the] pleadings," and is instead "obliged to adduce evidence of specific facts." Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (first quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992), then

2

quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)). The Court will also "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Daynard, 290 F.3d at 51.

## II. BACKGROUND

Plaintiff is the wife of decedent William Tchouamou Ganjui ("Mr. Ganjui") and mother of decedent Menelik Tchouamou. Compl. ¶¶ 1, 5. Plaintiff and her husband had two other children, Aurellia Llana Saleng and Wilma Tchouamou Mgabue. Id. ¶ 6. Plaintiff's family resided exclusively in Massachusetts from 2007 to 2017, and Plaintiff now maintains residences in both Massachusetts and Georgia. [ECF No. 14-1 at 7].

Marriott International Inc. is a Delaware corporation with its principal place of business in Maryland. Compl. ¶ 7; [ECF No. 11 at 11]. Marriott Worldwide, a wholly-owned subsidiary of Marriott International Inc., is a Maryland corporation with its principal place of business in Maryland. [ECF No. 11 at 11]. Marriott markets its hotels in Massachusetts through, *inter alia*, print advertising, direct mailings, television, radio, internet, and special rate reduction programs. Compl. ¶ 14.

Reluxicorp is a corporation organized under the Canada Business Corporations Act with its principal place of business in Montreal, Quebec. Id. ¶ 9. In 2003, Reluxicorp and Marriott entered into a franchise agreement (the "Franchise Agreement") which obligated Marriott to market and promote Reluxicorp's Montreal hotel via print, direct mailings, television, radio, interactive websites, and other means as "The Residence Inn by Marriott." Id. ¶ 17. Marriott marketed Reluxicorp's Montreal hotel in Massachusetts and also through its website, which allows individuals, including Massachusetts residents, to view, receive information about, book, and pay for rooms at the hotel online. Id. ¶ 18. Reluxicorp paid Marriott annual fees and costs

3

under the Franchise Agreement for the branding and marketing provided by Marriott. Id. ¶¶ 23–26. The Franchise Agreement also required Reluxicorp to abide by all federal, state, and local laws, rules, and regulations, and subjected Reluxicorp's hotel to inspections by Marriott. Id. ¶¶ 69–76.

Plaintiff and Mr. Ganjui viewed advertisements in Massachusetts for Reluxicorp's Marriott hotel through print, email, and direct mail advertisements. Id. ¶¶ 27–30. In March or April of 2016, Mr. Ganjui and Plaintiff discussed booking a room for Mr. Ganjui and their children at Reluxicorp's hotel based, in part, upon Marriott marketing materials that were sent to their home in Massachusetts and featured a pool that "was a big draw." Id. ¶ 33; [ECF No. 14-1 at 2]. Mr. Ganjui also obtained a "Friends and Family" discount rate authorization form from the Boston Marriott Copley Place in Boston, Massachusetts, with the intent of using it at Reluxicorp's hotel. Compl. ¶ 35; [ECF No. 14-1 ¶¶ 11–16]. Mr. Ganjui then reserved a room at Reluxicorp's hotel for his children and himself using Marriott's website. Compl. ¶ 36.

On or about April 20, 2016, Mr. Ganjui, along with his three children, traveled to Reluxicorp's hotel in Montreal. Id. ¶ 37. Plaintiff was studying for an exam, and one purpose of the trip to Montreal was to provide her an opportunity to study. [ECF No. 14-1 ¶¶ 19–20]. After checking in and successfully using the "Friends and Family" discount form, Mr. Ganjui brought his children to the hotel's pool. Compl. ¶¶ 38, 40. When Mr. Ganjui and his children arrived at the pool, there were no other guests present, no hotel staff working at the pool responsible for safety, and no cameras used to monitor the pool remotely. Id. ¶¶ 42–50. While in the pool, Mr. Ganjui and his son Menelik Tchouamou began to drown. Id. ¶¶ 50–52. Mr. Ganjui's two other children were able to remove Menelik Tchouamou from the pool, but he was unconscious. Id. ¶ 54. Both Mr. Ganjui and Menelik Tchouamou were later pronounced dead. Id. ¶ 61.

4

## III. PERSONAL JURISDICTION

To exercise personal jurisdiction over Defendants, the Court must "find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).

The Massachusetts long-arm statute, provides, in relevant part: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth . . . ." Mass. Gen. Laws ch. 223A, § 3. "The 'arising from' clause in [the long-arm statute] is . . . generously construed in favor of asserting personal jurisdiction, by applying a 'but for' causation test." Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 112 (D. Mass. 2003). "[A] claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State." Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291 (D. Mass. 2017) (quoting Tatro v. Manor Care, Inc., 625 N.E.2d 549, 553 (Mass. 1994)). The arising from inquiry asks "[d]id the defendant's contacts with the Commonwealth constitute the first step in a train of events that result[ed] in the . . . injury." Id. (internal quotation marks omitted) (quoting Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 114 (1st Cir. 1997)). "[T]he defendant's involvement need not be major, as 'just a few acts on [his] part can often suffice to satisfy [subsection (a)]'s threshold for transacting business.'" Scuderi Grp., LLC v. LGD Tech., LLC, 575 F. Supp. 2d 312, 319 (D. Mass. 2008) (quoting Workgroup Tech. Corp., 246 F. Supp. 2d at 110).

Personal jurisdiction consistent with the Due Process Clause can be either general or specific. Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). To establish general jurisdiction over a corporation, the corporation's "affiliations with the State [must be] so continuous and systematic as to render [it] essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 138 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). Under this standard, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction." Id. at 137 (internal quotation marks omitted).

The First Circuit applies a three-prong test in determining whether the exercise of specific personal jurisdiction over a nonresident defendant is constitutional:

> (1) whether the claim "directly arise[s] out of, or relate[s] to, the defendant's forum state activities;" (2) whether the defendant's in-state contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable;" and (3) whether the exercise of jurisdiction is reasonable.

C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (quoting Daynard, 290 F.3d at 60). The plaintiff must succeed on all three prongs in order to establish jurisdiction. Id.

### A.  Attributability of Marriott's Contacts to Reluxicorp

As an initial matter, the Court must determine whether Marriott's actions may be attributed to Reluxicorp for the purpose of the jurisdictional analysis. "For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal." Ameral v. Intrepid Travel Party, Ltd., 128 F. Supp. 3d 382, 388 (D. Mass. 2015) (quoting Daynard, 290 F.3d at 55). While Marriott and Reluxicorp are separate business entities, Plaintiff argues that Marriott's contacts with Massachusetts are attributable to Reluxicorp based on an actual or apparent agency

6

relationship between the companies. [ECF No. 14 at 8]. Only Marriott is alleged to have itself contacted Massachusetts, and the Court will therefore consider whether Marriott's forum contacts may be attributed to Reluxicorp for the purpose of the jurisdictional inquiry.

For the actions of one defendant to be attributed to another, the Court must determine "whether the relationship between [the defendants], however it is labeled, is sufficient to attribute [one defendant's] in-state contacts with the [the other defendant] to exercise jurisdiction that comports with due process." Weinberg v. Grand Circle Travel, LCC, 891 F. Supp. 2d 228, 240 (D. Mass. 2012) (citing Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 7–8 (1st Cir. 2002)). This analysis turns on: (1) whether Marriott was Reluxicorp's agent, and (2) whether Reluxicorp either authorized or later ratified the contacts with Massachusetts that form the basis for jurisdiction. See Daynard, 290 F.3d at 53–54. "Even if the defendant's relationship falls slightly outside of the confines of a partnership, joint venture, or other agency relationship, the court may find that a sufficient relationship exists under the Due Process Clause to permit the exercise of jurisdiction." Weinberg v. Grand Circle Travel, LCC, 891 F. Supp. 2d 228, 241 (D. Mass. 2012) (citing Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 56–57 (1st Cir. 2002)).

Here, although there may not have been an actual agency relationship, the Defendants all used the Marriott name and coordinated their business and marketing in a manner that may reasonably have created the appearance of authority to bind one another. In exchange for annual fees and costs, Marriott marketed Reluxicorp's hotel, and Reluxicorp used Marriott's name and marketing abilities with the expectation that Marriott would advertise its hotel internationally and customers would visit the hotel because it was affiliated with Marriott. [ECF No. 14-9 at 5-9]; see Ameral, 128 F. Supp. 3d at 388 (holding that there was a sufficient principal-agent

7

relationship to impute jurisdiction where one party advertised accommodations and facilitated booking and payment); O'Keefe v. Amin, No. CIV. A. 95-12595-WGY, 1996 WL 463685, at *2–3 (D. Mass. Aug. 2, 1996) (finding an agency relationship between Days Inn and franchisee because Days Inn advertised and provided name recognition for annual fees and costs); Daynard, 290 F.3d at 56–59 (finding agency relationship where one party created the impression that there was a principal-agent relationship and both parties upheld this impression); Weinberg, 891 F. Supp. 2d at 242 ("the purpose of an apparent agency analysis is to focus on conduct that leads a third party to believe that the agent has authority and thus creates apparent authority to those persons who act upon it." (internal quotation marks omitted)). Rooms at Reluxicorp's "The Residence Inn by Marriott" could be booked through Marriott's centralized reservation system, and both companies promoted the hotel under the Marriott name. Compl. ¶¶ 18–20. Their efforts were effective enough that Mr. Ganjui did not appreciate that the hotel was not owned and operated by an entity other than Marriott. Id. ¶ 31. Additionally, when Mr. Ganjui checked into Reluxicorp's hotel, Reluxicorp accepted the "Friends and Family" discount rate authorization form that Marriott had given Mr. Ganjui in Massachusetts which entitled him to a discount "according to Company policy." Compl. ¶ 35; [ECF No. 14-1 ¶¶ 11–16]. Therefore, based on the appearance created by the parties' relationship, Marriott's communications to Plaintiff's family in Massachusetts will be attributed to Reluxicorp for the purpose of the jurisdictional inquiry. See Ameral, 128 F. Supp. 3d at 388.

### B. Massachusetts Long-Arm Statute

The Massachusetts long-arm statute is easily satisfied here because Marriott's advertisements of the Reluxicorp hotel in Massachusetts, which were made pursuant to the Franchise Agreement between Reluxicorp and Marriott, were sent directly to Plaintiff in

8

Massachusetts and were the first step in a train of events that led to Plaintiff's injury. Because the advertisements sent to Massachusetts are a but-for cause of the injury, the long-arm statute is satisfied.

As Defendants are not incorporated in Massachusetts and do not have their principal place of business in Massachusetts, the Court does not have general jurisdiction. Daimler AG v. Bauman, 571 U.S. 117, 139 n.19 (limiting general jurisdiction beyond a corporation's place of incorporation and principal place of business to the possibility of an exceptional case); see also Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 447–48 (1952) (exceptional circumstances caused by the second world war rendered corporation subject to jurisdiction in Ohio). The Court therefore restricts its analysis to the question of whether it can exercise specific jurisdiction consistent with due process.

### C. Specific Jurisdiction Consistent with Due Process

For the Court to have specific jurisdiction over Defendants consistent with the Due Process Clause, Plaintiff must succeed on all three prongs of the specific jurisdiction test (relatedness, purposeful availment, and reasonableness). See C.W. Downer & Co., 771 F.3d at 65.

#### 1. Relatedness

For a party to come within a court's specific jurisdiction, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996). The relatedness test "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action," Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994), and is a "flexible, relaxed standard," N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005).

Traditionally, the First Circuit has applied a "proximate cause standard" when determining if a defendant's contacts are sufficient to satisfy the relatedness test. Harlow, 432 F.3d at 61. The proximate cause standard is preferred for the relatedness test "because it so easily correlates to foreseeability, a significant component of the jurisdictional inquiry." Nowak, 94 F.3d at 715. The First Circuit has made clear, however, that "strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive." Id. "When a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose," and "the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage." Id. at 715–16. "This concept represents a small overlay of 'but for' on 'proximate cause.'" Id. at 716.

Here, Marriott, on behalf of Reluxicorp, directly targeted Plaintiff and her family, who were residents of Massachusetts, by sending direct mail advertisements to their home. These direct mail advertisements were sent in an effort to entice Plaintiff and her family to stay at Reluxicorp's hotel in Montreal. This purpose was achieved when Plaintiff's husband, Mr. Ganjui, based in part on those direct mail advertisements, decided to book a stay at Reluxicorp's hotel. Plaintiff's family was then harmed while engaged in the relationship Marriott sought to establish. Thus, the nexus between Marriott's contacts with Massachusetts and the cause of action "is sufficiently strong to survive the due process inquiry at least at the relatedness stage." See id. at 715–16 (holding that the relaxed relatedness test was satisfied when a Massachusetts resident drowned in a Hong Kong hotel's pool after the hotel targeted the Massachusetts resident with the hopes that they would stay at the hotel); Weinberg, 891 F. Supp. 2d at 235 (holding that

10

the relaxed application of the relatedness test applies when a foreign defendant directly targets Massachusetts residents in an ongoing effort to further a business relationship); Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 67 (D. Mass. 2001) (holding that Nowak's relaxed relatedness test should be applied and was satisfied when Walt Disney World Resort advertised one of its resorts to Massachusetts residents and a Massachusetts resident, induced by the advertisements to stay at a Disney resort, was injured on the property); see also Rooney v. Walt Disney World Co., No. CIV.A. 02-12433-GAO, 2003 WL 22937728, at *3–4 (D. Mass. Nov. 25, 2003) (finding Nowak's relaxed relatedness test satisfied where Disney advertised in Massachusetts about a Florida resort and a Massachusetts resident visited the resort because of those advertisements and was injured there).

Defendants argue that the Nowak's relaxed relatedness test should not be used here because it is applicable only when there is a preexisting established business relationship between the parties. [ECF No. 19 at 7–11]. To support this contention, Defendants cite four cases in which the Nowak standard was not applied. See id. at 10–11. The Court finds these cases distinguishable. In three of the cases, Christopher v. Mount Snow, Ltd., No. 95-10352-MLW, 1996 WL 590738 (D. Mass. Sept. 24, 1996), Dagesse v. Plant Hotel N.V., 113 F. Supp. 2d 211 (D.N.H. 2000), and Badia v. Hamanasi Adventure & Dive Resort, No. 16-cv-10252-LTS, 2017 WL 551817 (D. Mass. Feb. 10, 2017), the defendants did not directly target advertising at the individual plaintiffs. In the fourth case, Rodriguez v. Samsung Elecs. Co., Ltd., 827 F. Supp. 2d 47 (D. Mass. 2011), the plaintiff was not on the property in question as a result of advertising. Here, Plaintiff and her family were targeted by Marriott's advertising via direct mailing which triggers and satisfies Nowak's relaxed relatedness test.

2. **Purposeful Availment**

The Court must next determine whether Defendants' in-state contacts "represent a purposeful availment of the privilege of conducting activities in the forum state." Sigros, 129 F. Supp. 2d at 66. For Defendants to have purposefully availed themselves of the privilege of conducting activities in Massachusetts, their contacts with Massachusetts must be voluntary, see Vencedor Mfg. Co. Inc. v. Gougler Indus., Inc., 557 F.2d 886, 891 (1st Cir. 1977), and such that they should reasonably anticipate being haled into court in Massachusetts, see Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 905 (1st Cir. 1980).

Here, both requirements are met. Marriott chose to advertise Reluxicorp's hotel in Massachusetts through direct mail advertisements and other means. Compl. ¶ 14. These advertisements were part of Marriott's ongoing effort to attract customers to Marriott branded hotels, and made it foreseeable that Marriott and Reluxicorp would be haled into court in Massachusetts due to Marriott's advertising efforts. See Nowak, 94 F.3d at 717 (holding that a foreign hotel's direct targeting of residents and advertising in a forum state constituted purposeful availment); Ameral, 128 F. Supp. 3d at 393 (holding that a foreign tour company's advertising to and interaction with Massachusetts residents through its website satisfied the purposeful availment test); Calkins v. Harrah's Entm't, Inc., No. CIV.A.04-12044-GAO, 2005 WL 189704, at *2 (D. Mass. Jan. 27, 2005) (holding that defendant purposefully availed itself of the privilege of conducting business in Massachusetts by sending direct mail advertisements to plaintiff).

### 3. Reasonableness

The final step of the specific jurisdiction test is to determine if exercising jurisdiction over Defendants would be reasonable. C.W. Downer & Co., 771 F.3d at 65. The First Circuit has identified the following "Gestalt factors" to guide the reasonableness inquiry:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Pritzker v. Yari, 42 F.3d 53, 63–64 (1st Cir. 1994) (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)). The purpose of the Gestalt factors is to aid the Court in achieving substantial justice, particularly where the jurisdictional question is close. Ace Am. Ins. Co. v. Oyster Harbors Marine, Inc., 310 F. Supp. 3d 295, 309 (D. Mass. 2018) (citing Nowak, 94 F.3d at 717).

The first Gestalt factor, the burden on Defendants, is of little significance here. See Pritzker, 42 F.3d at 64. Defending an action in a foreign jurisdiction "is almost always inconvenient and/or costly, . . . [and] this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Id. The fact that a defendant is located outside of the United States is not enough to establish a special or unusual burden. See Nowak, 94 F.3d at 718 (noting that requiring a Hong Kong defendant to travel to Boston did not constitute a special or unusual burden).

With respect to the second Gestalt factor, the forum state's interest in adjudicating the dispute, Massachusetts courts have a "strong interest in protecting the rights of American citizens from negligence that occurs outside our borders." Weinberg, 891 F. Supp. 2d at 247. That interest, however, is diminished where the injury itself occurs outside of Massachusetts. Rodriguez v. Samsung Elecs. Co. Ltd., 827 F. Supp. 2d 47, 52 (D. Mass. 2011). Accordingly, Massachusetts' interest in adjudicating the dispute also does not weigh heavily in favor of any party.

The third Gestalt factor, Plaintiff's interest in obtaining convenient and effective relief, weighs in favor of Plaintiff, who maintains a residence in Massachusetts, and "has an interest in bringing this action in Massachusetts." Adelson v. Hananel, 510 F.3d 43, 51 (1st Cir. 2007).

The fourth factor, the judicial system's interest in the most efficient resolution, does not favor either party. See Sawtelle, 70 F.3d at 1395; Ticketmaster, 26 F.3d at 211. Regardless of where the trial occurs, witnesses will have to travel, documents and testimony will likely have to be interpreted, and both parties will be somewhat inconvenienced.

The fifth factor, which concerns social policy considerations, is likewise not dispositive. United States federal courts have a strong interest in protecting United States citizens from negligence, Weinberg, 891 F. Supp. 2d at 247, while Canada has an interest in protecting its business and tourism industry, see Nowak, 94 F.3d at 719. Canada's interests are unlikely to be harmed, however, by having this Court hear this case.

Considering that the Gestalt factors weigh at least slightly in favor of Plaintiff, the Court's exercise of jurisdiction over Defendants is reasonable, and the Court finds that it has specific personal jurisdiction over Defendants.

## IV. FORUM NON CONVENIENS

The Defendants have argued that, even if the Court concludes that is has jurisdiction over Defendants, it should dismiss Plaintiff's complaint for *forum non conveniens*.[1] [ECF No. 11 at 6–16]. *Forum non conveniens* is a discretionary tool that allows a district court to dismiss a claim, even when it has jurisdiction. Adelson, 510 F.3d at 52. It is tempered by the well-established principle that a "plaintiff's choice of forum should rarely be disturbed." Piper

---

[1] "The doctrines of personal jurisdiction and *forum non conveniens* share certain similarities, but they embody distinct concepts and should not casually be conflated." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 150 (1st Cir. 1995).

14

Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981). Under the two-prong test endorsed by the First Circuit for evaluating a motion to dismiss for *forum non conveniens*, the defendant "bears the heavy burden of establishing that an adequate alternative forum exists and that 'considerations of convenience and judicial efficiency strongly favor litigating the claim in the second forum.'" Adelson, 510 F.3d at 52 (emphasis omitted) (quoting Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000)). The burden on defendant is especially high where a plaintiff has brought the action in his home forum. See Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947) (holding that where plaintiff has initiated action in home forum, defendant must make "clear showing" of facts which establish either "oppressiveness and vexation" to defendant or that chosen forum is "inappropriate").

When the Court initially ruled on the motion to dismiss for *forum non conveniens,* it appeared that the three-year statute of limitations in Canada had run. Unbeknownst to the Court, Plaintiff had filed suit in Canada to preserve her right to proceed there just days before the Court's order issued. It is now clear that Canada provides an adequate alternative forum because Plaintiff filed a lawsuit there within the limitations period. Given this and Defendants' request for limited discovery on the issue, the Court may revisit its April 29, 2019 order on the motion to dismiss for *forum non conveniens* once the parties have had an opportunity to complete the limited relevant discovery.[2]

---

[2] The initial opinion issued on these motions included a much more detailed analysis of issues related to *forum non conveniens* and denied the motion to dismiss. In light of the ongoing *forum non conveniens* discovery and the pending lawsuit in Canada, this discussion has been deleted from this amended memorandum and order. The motion to dismiss for *forum non conveniens* is effectively denied with leave to renew once the requested discovery has been completed.

## V.     CONCLUSION

For the above reasons, the Defendants' motion to dismiss [ECF No. 11] is <u>DENIED WITH LEAVE TO RENEW AS TO FORUM NON CONVENIENS</u>.  The parties shall complete discovery relevant to *forum non conveniens* by July 26, 2019, and Defendants may then renew their motion.

**SO ORDERED.**

July 8, 2019

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
DISTRICT JUDGE