UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHIMENE MBAGUE NANDJOU, Individually, and as Administratrix of THE ESTATE OF MENELIK TCHOUAMOU and THE ESTATE OF WILLIAM TCHOUAMOU GANJUI, and as Mother and Next Friend of AURELLIA LLANA SALENG and WILMA TCHOUAMOU MGABUE, <br><br> Plaintiff, <br><br> v. <br><br> MARRIOTT INTERNATIONAL, INC., MARRIOTT WORLDWIDE CORPORATION, and RELUXICORP, INC. d/b/a THE RESIDENCE INN BY MARRIOTT, <br><br> Defendants. | Civil Action No. 18-cv-12230-ADB |

## MEMORANDUM AND ORDER ON DEFENDANTS' RENEWED MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

BURROUGHS, D.J.

Plaintiff Chimene Mbague Nandjou ("Plaintiff") filed this action against Marriott International, Inc., Marriott Worldwide Corporation (together "Marriott"), and Reluxicorp, Inc. d/b/a The Residence Inn by Marriott ("Reluxicorp") (collectively "Defendants"), claiming that Defendants' conduct led to the deaths of her husband, William Tchouamou Ganjui, and child, Menelik Tchouamou. Plaintiff brings several claims, including wrongful death, vicarious liability, and negligent infliction of emotional distress. See [ECF No. 1-3 ("Complaint" or "Compl.")].

Presently before the court is Defendants' renewed motion to dismiss the Complaint for *forum non conveniens*. [ECF No. 39]. For the reasons explained more fully below, Defendants'

1

motion to dismiss [ECF No. 39] is GRANTED, subject to the conditions that Defendants continue to submit to the personal jurisdiction of the Canadian courts and that the Canadian courts continue to maintain personal jurisdiction over Defendants.

I. **BACKGROUND**

The Court presumes familiarity with the underlying facts alleged in the Complaint, which were summarized in the Court's memorandum and order denying Defendants' original motion to dismiss. [ECF No. 38]. Plaintiff is the wife of decedent William Tchouamou Ganjui and mother of decedent Menelik Tchouamou. [Compl. ¶¶ 1, 5]. Plaintiff and her husband had two other children, Aurellia Llana Saleng and Wilma Tchouamou Mgabue. [Id. ¶ 6]. Plaintiff's family lived in Massachusetts from 2007 to 2017. [ECF No. 14-1 ¶ 38]. Plaintiff now maintains residences in both Massachusetts and Georgia. [Id.].

Plaintiff and Mr. Ganjui saw advertisements in Massachusetts for Reluxicorp's Marriott hotel through print, email, and direct mail advertisements. [Compl. ¶¶ 27–30, 35]. They then obtained a "Friends and Family" discount rate authorization from the Boston Marriott Copley Place in Boston, Massachusetts, with the intent of using it at Reluxicorp's hotel. [Compl. ¶¶ 27–30, 35; ECF No. 14-1 ¶¶ 11–16].

Reluxicorp is a corporation organized under the Canada Business Corporations Act with its principal place of business in Montreal, Quebec. [Compl. ¶ 9]. In 2003, Reluxicorp and Marriott entered into a franchise agreement (the "Franchise Agreement") that obligated Marriott to market and promote Reluxicorp's Montreal hotel via print, direct mailings, television, radio, interactive websites, and other means as "The Residence Inn by Marriott." [Id. ¶ 17]. Marriott International Inc. is a Delaware corporation with its principal place of business in Maryland. [Compl. ¶ 7; ECF No. 11 at 11]. Marriott Worldwide, which is a wholly-owned subsidiary of

2

Marriot International Inc., is a Maryland corporation with its principal place of business in Maryland. [ECF No. 11 at 11].

On or about April 20, 2016, Mr. Ganjui, along with his three children, traveled to Reluxicorp's hotel in Montreal. [Compl. ¶ 37]. Plaintiff was studying for an exam, and one purpose of the trip to Montreal was to provide her an opportunity to study. [ECF No. 14-1 ¶¶ 19–20]. After checking in, Mr. Ganjui brought his children to the hotel's pool. [Compl. ¶¶ 38, 40]. When Mr. Ganjui and his children arrived at the pool, there were no other guests present, no hotel staff working at the pool responsible for safety, and no cameras used to monitor the pool remotely. [Id. ¶¶ 42–50]. While in the pool, Mr. Ganjui and his son began to drown. [Id. ¶¶ 50–52]. Mr. Ganjui's two other children were able to remove Menelik Tchouamou from the pool, but he was unconscious. [Id. ¶ 54]. One witness claims to have seen Mr. Ganui's two other children remove Menelik from the pool, but was unable to access the pool because it was limited to those with keycards. [ECF No. 39-4 at 59; ECF No. 39-5 at 6]. That witness solicited the help of a few other people at the hotel, who performed CPR on Menelik and removed Mr. Ganui from the pool. [ECF No. 39-4 at 59–69; ECF No. 39-5 at 6]. First responders arrived on the scene a few minutes later, inserted ventilation tubes, and continued CPR. [ECF No. 39-4 at 59–69; ECF No. 39-5 at 6]. Both Mr. Ganjui and Menelik were later pronounced dead. [Compl. ¶ 61].

## II. PROCEDURAL HISTORY

Plaintiff filed this action in state court in Massachusetts on September 12, 2018. [Compl.]. Defendants removed the case to federal court on October 25, 2018. [ECF No. 1]. Defendants subsequently moved to dismiss the complaint for *forum non conveniens* and lack of personal jurisdiction on November 30, 2018. [ECF No. 11]. After Plaintiff responded, [ECF

No. 14], and Defendants replied, [ECF Nos. 19, 22], the Court denied the motion to dismiss on April 29, 2019, [ECF No. 23]. Defendants then filed a motion for reconsideration, [ECF No. 26], which Plaintiff opposed, [ECF No. 27]. On July 8, 2019, the Court denied the motion, with leave to amend as to *forum non conveniens*. [ECF No. 38]. The parties then engaged in limited discovery relating to the issue of *forum non conveniens*, which concluded on July 26, 2019. [Id. at 16].

On August 23, 2019, Defendants filed their second motion to dismiss the complaint for *forum non conveniens*. [ECF No. 39]. Plaintiff responded on September 6, 2019. [ECF No. 40]. The Court then permitted further briefing from Defendants, [ECF No. 43], and Plaintiff, [ECF No. 47].

### III. STANDARD OF REVIEW

*Forum non conveniens* is a discretionary tool that allows a district court to dismiss a claim, even when it has jurisdiction. Adelson v. Jananel, 510 F.3d 43, 52 (1st Cir. 2007) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947)). The Court may "decline to exercise its jurisdiction . . . where it appears that the convenience of the parties and the court, and the interests of justice indicate that the action should be tried in another forum." Royal Bed & Spring Co., Inc. v. Famossul Industria e Comercio de Moveis Ltda., 906 F.2d 45, 48 (1st Cir. 1990). Unlike a transfer of venue between federal courts, which is governed by 28 U.S.C. § 1404(a), there is no statutory mechanism for federal courts to transfer a case to foreign jurisdictions. See Snöfrost AB v. Håkansson, 353 F. Supp. 3d 99, 103 (D. Mass. 2018). "Dismissal has the practical effect of requiring the plaintiff to file his complaint in a more convenient forum elsewhere." Howe v. Goldcorp Invs., Ltd., 946 F.2d 944, 947 (1st Cir. 1991).

The Court begins its analysis with the presumption that the "plaintiff's choice of forum should rarely be disturbed." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981). Under the two-prong test endorsed by the First Circuit for evaluating a motion to dismiss for *forum non conveniens*, the defendant "bears the heavy burden of establishing that an adequate alternative forum exists and that 'considerations of convenience and judicial efficiency strongly favor litigating the claim in the second forum.'" Adelson, 510 F.3d at 52 (emphasis omitted) (quoting Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000)). The burden on defendant is especially high where a plaintiff has brought the action in her home forum. See Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947) (holding that, where plaintiff has initiated action in home forum, defendant must make "clear showing" of facts that establish either "oppressiveness and vexation" to defendant or that chosen forum is "inappropriate").

Trial courts are afforded great deference in their determinations regarding *forum non conveniens*. See Piper Aircraft, 454 U.S. at 257 ("[The trial court] may be reversed only where there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.").

## IV. DISCUSSION

### A. Rebuttable Presumption That the Case Should be Litigated in Massachusetts

"It is undisputed that a plaintiff enjoys some degree of deference for his original choice of forum." Adelson, 510 F.3d at 53. Plaintiffs enjoy heightened deference when they choose their *home* forums. Id. Although Plaintiff has relocated to Georgia since the accident giving rise to this case, "the Massachusetts district court is still deemed a 'home forum' where the alternative is foreign." See id.

5

The fact that Plaintiff filed a concurrent lawsuit in Canada is, on its own, insufficient to defeat the starting presumption that this claim should be litigated in the District of Massachusetts. See, e.g., id. at 54 ("The existence of concurrent litigation is not a relevant factor to the [*forum non conveniens*] analysis . . . .").

The Court therefore begins its analysis with the presumption that the case should be litigated here, with Defendants bearing the burden of overcoming this presumption.

**B.  Considerations Under the First Circuit's Two-Step Analysis**

The Supreme Court has stressed that the doctrine of *forum non conveniens* is "'flexible,' that its 'contours' are not 'rigid,' and that, in applying it, courts are to take account of many 'considerations' related to fairness and convenience." Howe, 946 F.2d at 947 (quoting Piper Aircraft, 454 U.S. at 249). In the First Circuit, courts must consider whether an adequate alternative forum exists and, if so, whether it would be more convenient and efficient to litigate in that alternative forum. Adelson, 510 F.3d at 52.

1.  Canada Is an Adequate Alternative Forum

Defendants must first demonstrate that the Canadian court provides an adequate alternative forum. This "condition is usually met 'if the defendant demonstrates that the alternative forum addresses the types of claims that the plaintiff has brought and that the defendant is amendable to service of process there." Interface Partners Int'l Ltd. v. Hananel, 575 F.3d 97, 101 (1st Cir. 2009) (quoting Iragorri, 203 F.3d at 12). The fact that the claim is being concurrently litigated in Canada is evidence of, though insufficient to establish, that jurisdiction's adequacy. Id. at 103 (upholding a district court's determination that Israel was an adequate alternative forum because the courts addressed the kinds of claims at issue and the case had already been litigated in Israel for nearly four years).

6

The Court previously found that Canada was not an adequate forum because the statute of limitations had run on Plaintiff's claim in Canada. [ECF No. 23 at 15–16]. Subsequently, the Court learned that Plaintiff had filed a timely complaint, such that the statute of limitations would not bar litigating in Canada. As previously discussed, Defendants have consented to jurisdiction in Canada and Canada's civil law system would cover Plaintiff's dispute. Therefore, the Court finds that Canada would be an adequate alternative.

2. Balancing of Public and Private Interests Supports Canada

Having determined that Canada provides an adequate forum, the Court must consider whether the balance of public and private interests supports the case being litigated in Canada. The Supreme Court has provided a non-exhaustive list of considerations when weighing interests. See Gilbert, 330 U.S. at 508–09. These considerations include the private interests of ease of access to sources of proof, availability of compulsory process for witnesses, the possibility of viewing the site of the accident, and "all other practical problems that make trial of a case easy, expeditious, and inexpensive," as well as the public interests of having a controversy decided at home and having the case decided by a court applying its own law. Van Cauwenberghe v. Biard, 486 U.S. 517, 528 (1988) (citing Gilbert, 330 U.S. at 508).

a. The Public Interests are of Neutral Weight

Factors relevant to the Court's public interest analysis include:

> the administrative difficulties flowing from court congestion; the "local interest in having controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Piper Aircraft Co., 454 U.S. at 241 n.6 (quoting Gilbert, 330 U.S. at 509).

7

Defendants have not raised any arguments concerning the relative congestion or speed of Canadian court dockets. The Court therefore will not make any determination regarding the comparative efficiency of the case being litigated in either Massachusetts or Canada in that regard.

"Although Canada may have a strong interest in cases involving its citizens, the United States has an equally strong interest in disputes affecting its own citizens." Neelon v. Krueger, 63 F. Supp. 3d 165, 173 (D. Mass. 2014). The dispute here concerns the death of two Massachusetts residents at a Canadian hotel owned by a Canadian company that entered into an agreement with a Maryland corporation. Because the claims at hand stem from a Canadian company's alleged negligence, which is claimed to have caused the death of two Massachusetts residents, both jurisdictions have an interest in resolving the dispute. Defendants have not demonstrated that Canada has a stronger interest in having the case litigated there. Rodriguez v. Samsung Elecs. Co., Ltd., 734 F. Supp. 2d 220, 228 (D. Mass. 2010) (finding that the public interest considerations were neutral because both forums had an interest in resolving the matter).

The Court would likely apply Canadian law pursuant to the choice-of-law rules of Massachusetts. Volkswagen Grp. of Am., Inc. v. Peter J. McNulty Law Firm, Irwin & Boesen, P.C., Berger & Montague (In re Volkswagen & Audi Warranty Extension Litig.), 692 F.3d 4, 14, 17 (1st Cir. 2012); see, e.g., Imamura v. Gen. Elec. Co., 371 F. Supp. 3d 1, 14 (D. Mass. 2019) ("For tort cases, Massachusetts choice of law rules generally require application of the substantive laws of the jurisdiction wherein the tort occurred." (internal quotation marks and citations omitted)); Murphy v. BMP Three Ltd., No. 07-cv-11492, 2011 WL 1356712, at *1 (D. Mass. Apr. 11, 2011) (finding that foreign jurisdiction's law would likely apply regardless of the forum in which the case was tried). The First Circuit has stressed that "the task of deciding

8

foreign law is a chore federal courts must often perform" and therefore should not be given "undue importance" in a *forum non conveniens* analysis. Mercier v. Sheraton Int'l, Inc., ("Mercier III"), 981 F.2d 1345, 1357 (1st Cir. 1992). But see Hananel, 575 F.3d at 106–07 (affirming a district court's decision that foreign jurisdiction would be more appropriate forum when that foreign jurisdiction's law would govern the court's determination).

Similarly, the Court finds that the translation of documents is a neutral factor. Defendant argues that translation and interpretation would burden the Court, whereas the Canadian court proceedings would be bilingual. [ECF No. 39-1 at 21–22]. It is unclear if a large proportion of potentially determinative evidence or testimony would need to be translated or interpreted. For example, the coroner and medical providers have already provided English translations of their records, [ECF No. 39-10 at 15], and the witness accounts in the police report were written in English, [ECF No. 39 at 59–69]. Though the Defendants note that the 68-page police report is in French and alludes to medical records that may also be in French, this is insufficient to weigh greatly in favor of dismissing the case.

The Court finds that the public interests are indeterminant. Both jurisdictions have an interest in hearing this case. The Court would need to apply the law of a foreign jurisdiction and require the translation and interpretation of evidence and testimony, but neither the application of foreign law nor the limited translation required would be unduly burdensome. As the First Circuit has noted, courts are often charged with these sorts of tasks. See Mercier III, 981 F.2d at 1357. Such concerns are therefore insufficient to warrant dismissal.

b. The Private Interests Favor the Case Being Litigated in Canada

The Court finds, however, that factors relating to private interests, including access to witnesses and evidence, weigh in favor of the case being litigated in Canada. Factors relevant to private interests analysis include:

> relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Piper Aircraft Co., 454 U.S. at 241 n.6.

The fact that the incident and Defendants' alleged negligence took place in Canada "weighs heavily in favor of the foreign forum." Interface Partners Int'l Ltd., 575 F.3d at 104; see also Howe, 946 F.2d at 951 (finding that the balance of conveniences favored the case being litigated in Canada because the relevant events and the parties' allegedly inappropriate actions all took place in Canada).

"Perhaps the most significant problem is presented by the inability to bring [certain witnesses] here for live cross-examination before a fact finder . . . ." Schertenleib v. Traum, 589 F.2d 1156, 1165 (2d Cir. 1978) cited with approval by Howe, 946 F.2d at 951–52; see Howe, 946 F.2d at 951 (finding that Canada was the more appropriate forum when most of the evidence and witnesses were in Canada); Cordon Holding B.V. v. Nw. Pub. Corp., No. 98-cv-4979, 1998 WL 867388, at *3 (S.D.N.Y. Dec. 14, 1998) ("The convenience of witnesses is the single most important factor in the *forum non conveniens* balance."); see also Getty Petroleum Mktg., Inc. v. 2211 Realty, LLC, 11-cv-40003, 2011 WL 2489988, at *6 (D. Mass. June 17, 2011) (finding that "[t]he convenience of expected witnesses is probably the most important factor, and the factor most frequently mentioned" in analogous proceedings under 28 U.S.C. § 1404(a)).

The Montreal police, in investigating the accident at issue in this case, produced a 68-page report and identified eight potential witnesses, all of whom were interviewed by the police. [ECF No. 39-4 at 38]. Seven of those witnesses had Quebec addresses at the time of their interviews; the other witness presently resides in Arizona. [Id.]. Of those potential witnesses, the Arizona resident was the first on the scene, but left to call the police and get help. [Id. at 16]. The accident was investigated by six Montreal police officers. [Id. at 39]. The cause of death was determined by the Quebec coroner, [ECF No. 39-5], who would apparently be unwilling to travel to Massachusetts to testify, [ECF No. 39-6]. In addition to these potential witnesses, Plaintiff identified Montreal-based doctors who treated her husband and child after the accident, [ECF No. 39-7 at 5], who would also seemingly be unwilling to travel to Massachusetts, [ECF Nos. 39-8, 39-9]. Defendants estimate that there are at least 25 potential non-party witnesses in Quebec, including witnesses at the hotel, police officers, doctors, ambulance officers, the coroner, and the building inspector. [ECF No. 39-1 at 9].

Plaintiff, meanwhile, argues that two Massachusetts residents witnessed the accident. [ECF No. 40 at 6]. From these witnesses' public statements, however, it seems that they did not actually observe the accident, but merely observed the aftermath, including the first responders at the scene. [ECF No. 39-11 (Video of Public Statements)]. Plaintiffs would also rely on the testimony of sixteen Massachusetts residents when determining damages, such as her husband's earning capability and her family's counseling treatment costs. [ECF No. 40 at 8, 14]. Finally, Plaintiff would call her own children and the Arizona resident as witnesses. [Id. at 14].

The Court is not tasked with simply comparing the number of witnesses residing in each jurisdiction. "[T]he district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the

11

parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses in the action." Van Cauwenberghe, 486 U.S. at 528.

Because Plaintiff claims that Defendants violated Canadian law, which required that the pool be supervised, the most important witnesses will be those who can speak to the hotel's policy regarding pool supervision and the exact circumstances on the day of the accident, including the cause of Plaintiff's family members' deaths. Defendants have demonstrated that the majority of those relevant witnesses are Canadian residents.

Plaintiff's argument that much of this testimony would be unnecessarily duplicative of her proposed Arizona witness' testimony is unavailing. From that potential witness' own statement, the witness was unable to access the pool area, had to get the help of another hotel guest, who began administering CPR, and utlimately left the pool area to get more help. [Id.]. Other potential witnesses then jumped in the pool to grab Plaintiff's husband. [Id.]. The Arizona witness subsequently took one of Plaintiff's children to another room to call Plaintiff. [Id.]. There were therefore periods of time during which the Arizona witness was not at the scene of the accident. The Arizona witness did not enter the pool or try to resuscitate the decedents. The Court therefore finds that the testimony of the Canadian resident witnesses would not be duplicative.

"[O]nly Canadian courts, not courts within the United States, have the legal power to compel the testimony of . . . Canadian potential witnesses who are not under the control of any party." Howe, 946 F.2d at 951. Plaintiff argues that Defendants have failed to demonstrate that all of the relevant Canadian witnesses would be unwilling or unable to testify in Massachusetts. [ECF No. 40 at 2, 14]. "[T]here is no 'blanket rule' that a defendant affirmatively demonstrate

. . . the unavailability of a foreign witness and the significance of the witness's testimony." Mercier III, 981 F.2d at 1356.

The Court understands that it may present a financial difficulty to litigate this matter in a Canadian court. Defendants are large corporations, whereas Plaintiff is a single parent. Plaintiff argues that she could not afford to litigate the claim in Canada because there is no contingency agreement in place. [ECF No. 40 at 18]. Defendants have demonstrated, however, that contingency fees are permissible and common in Canada. [ECF No. 43 at 2]. Further, it is not clear that the alleged financial burden of litigating this case in Canada from Plaintiff's current residence in Atlanta differs significantly from the cost of litigating in Boston from Atlanta.

## V.     CONCLUSION

For the above reasons, the Defendants' motion to dismiss [ECF No. 39] is GRANTED, subject to the conditions that Defendants continue to submit to the personal jurisdiction of the Canadian courts and that the Canadian courts continue to maintain personal jurisdiction over Defendants.

**SO ORDERED.**

October 28, 2019

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
DISTRICT JUDGE